UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAKE J. RUFFINO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:09-cv-1915 (VLB) |
| | : | |
| MELINDA McDANIEL, et al., | : | |
|     Defendants | : | June 20, 2011 |

**RULING GRANTING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #20], DENYING THE PLAINTIFF'S' CROSS-MOTION FOR SUMMARY JUDGEMENT [Doc. #22] AND SUPPLEMENTAL CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. #25] AND GRANTING DEFENDANT CHICANO'S MOTION TO WITHDRAW HIS ADMISSION TO PLAINTIFF'S REQUEST FOR ADMISSION NUMBER 9 [Doc. #23]**

The plaintiff, Jake J. Ruffino, commenced this action *pro se* against defendants Lieutenant Melinda McDaniel, Correctional Officers Jeremy Chicano, Bryan Zentek and Jason Ile and Psychiatrist Catherine Hair. The plaintiff alleges that defendants Chicano, Zentek and Ile, under the supervision of defendant McDaniel, used excessive force against him and that defendant Hair ordered that he be given psychiatric medication against his will. Both parties move for summary judgment. In addition, defendant Chicano moves to withdraw one of his responses to the plaintiff's requests for admission. For the reasons that follow, the defendants' motion for summary judgment is GRANTED in part, the plaintiff's cross-motion and supplemental cross-motion for summary judgment are DENIED and defendant Chicano's motion to withdraw admission is GRANTED.

1

# I. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is therefore entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, "[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

[plaintiff].'" *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252)).

## II. Facts[1]

In late November 2006, the plaintiff was on suicide watch at Northern Correctional Institution ("Northern") after cutting his left forearm. On November 24, 2006, after three days on suicide watch, the plaintiff was transferred from Northern to Garner Correctional Institution ("Garner") and put in the inpatient medical unit.

Dr. Hair evaluated the plaintiff on November 29, 2006, and on several subsequent dates. The plaintiff reported that he suffered from anxiety, experiencing different levels of anxiety at different times. He also told Dr. Hair that he had anger problems; was careful what he ate, making sure that his food was not tampered with; was impulsive; and very accident-prone. Dr. Hair diagnosed the plaintiff as suffering from a panic disorder, generalized anxiety disorder, Tourette's syndrome, mild to moderate obsessive compulsive disorder and intermittent explosive disorder. Dr. Hair prescribed medication and procedures to ensure that the plaintiff's paranoia about tampering were addressed.

On November 29, 2006, the plaintiff began banging on his cell door. He kicked the observation window in his cell, shattering the glass. As a result, the

---

[1] The facts are taken from the statements of undisputed facts filed by both parties pursuant to D. Conn. L. R. 56(a)1, the defendants' D. Conn. L. R. 56(a)2 statement and the attached exhibits. *See* Docs. ##20-3, 22-3, 24-1. The defendants provided plaintiff with notice of the requirement that he respond to their motion for summary judgment and copies of Fed. R. Civ. P. 56 and D.Conn. L.Civ. R. 56. *See* Doc. ##20-11 through 20-13. Although the defendants do not state that the incident occurred as the plaintiff alleged, they admit, for purposes of deciding their motion for summary judgment only, that the plaintiff's version of the incident is true. Defs.' Mem., Doc. #20-1, at 1 n.1.

on-call psychiatrist ordered that the plaintiff be placed in four point restraints for a few hours to calm down.

Dr. Hair saw the plaintiff on November 30, 2006. The plaintiff stated that he had been provoked into kicking the cell window by a correctional officer who had handcuffed the plaintiff behind his back while the plaintiff was wearing a prison jumpsuit that opened in the back. The correctional officer also would not turn off the light in the plaintiff's cell. The plaintiff also reported that he had racing thoughts and was able to sleep for only one hour. Dr. Hair prescribed medication for mood swings, racing thoughts, anger and poor impulsivity.

On December 5, 2006, the plaintiff told Dr. Hair that he was constantly anxious and was unable to sleep or sit still. He reported taking his medication in the evening but said that he often missed both breakfast and his morning doses of medication because he often just fell asleep at the time breakfast was served and morning medications were distributed.

On December 6, 2006, the plaintiff refused to go to the shower intended for his use and yelled at the correctional officer. Dr. Hair saw the plaintiff after this episode and asked whether he wanted medication to calm down. The plaintiff refused medication and calmed down on his own. The plaintiff acknowledged difficulty controlling his anger and agreed to an increased dose of medication. Dr. Hair again diagnosed the plaintiff with intermittent explosive disorder, generalized anxiety disorder, obsessive compulsive disorder, panic disorder and Tourette's syndrome.

Between December 6 and December 15, 2006, the plaintiff was calm and cooperative in the unit. He told staff that he wanted to remain at Garner and not return to Northern. On December 12, 2006, Dr. Hair conveyed the plaintiff's wishes to other mental health providers. No immediate response was conveyed to the plaintiff.

On December 15, 2006, the plaintiff became upset with the lack of information about whether he would return to Northern. He kicked the toilet in his cell off the wall and poured the water from the toilet bowl onto the floor. The plaintiff then picked up the toilet and dropped it onto the floor causing it to shatter. Counselor Supervisor Jennett came to the plaintiff's cell and spoke to him through the window. The plaintiff refused to comply with Counselor Supervisor Jennett's order that he step to the cell door to be handcuffed. Instead, the plaintiff picked up a piece of the broken toilet and threw it toward the cell window causing the window to crack. Dr. Hair and a nurse were standing at the window. The plaintiff then covered his cell door with his mattress.

Correctional Officer Diaz sprayed a chemical agent into the plaintiff's cell. The plaintiff then approached the cell door and allowed himself to be handcuffed. The door was opened and the plaintiff claims that defendants Chicano, Zentek and Ile slammed him to the floor face first even though he was cooperating with correctional staff. The plaintiff experienced pain but no injuries from being taken to the ground. Defendant Chicano punched the plaintiff twice in the side of his head, causing a cut to the plaintiff's ear. The officers then pulled the plaintiff to his feet and escorted him to the showers. En route, defendant Chicano bent the

plaintiff's fingers causing pain. The plaintiff claims that, once he was in the shower, defendant Chicano slammed the plaintiff's face against the wall, causing a bruise on the bridge of the plaintiff's nose. After a minute in the shower, the plaintiff was escorted to a cell where he was placed in four point restraints and, on Dr. Hair's order, forcibly injected with psychiatric medication.

### III. Discussion

The defendants move for summary judgment on four grounds: the plaintiff has not exhausted his administrative remedies as to the claim against defendant Hair, the allegations against defendant Hair fail to state a cognizable claim, the plaintiff's claim for use of excessive force fails as a matter of law and the defendants are protected by qualified immunity. The plaintiff concedes that summary judgment should enter on the claim against defendant Hair, but he asks the Court to grant his cross-moves for summary judgment on the excessive force claim. In addition, defendant Chicano moves to withdraw one response to the plaintiff's requests for admission. The court considers, as a preliminary matter, the motion to withdraw admission.

#### A. Motion to Withdraw Admission

Defendant Chicano moves to withdraw his response to Request for Admission 9 wherein the plaintiff asks him to admit that he slammed the plaintiff's head into the shower wall. Counsel states that, although defendant Chicano denied slamming the plaintiff's head into the wall, she inadvertently

entered the admission. Counsel also states that the other defendants denied that this incident occurred and refer the court to their admission responses. These responses, however, are not attached to the motion. The court notes, however, that the defendants denied this paragraph of the complaint and that defendant Chicano denies the allegation in his affidavit. *See* Docs. ##15, 24-1. There is no indication that defendant Chicano has altered his position.

The court may permit an admission to be withdrawn "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R.Civ. P.36(b). The Court finds that the admission was obviously entered in error. The answer's denial affords consideration of the merits of the claim.

For purposes of deciding the motions for summary judgment, the defendants accept the plaintiff's version of the incidents. Thus, the admission does not influence the court's ruling on the motions for summary judgment. As discussed below, the court has denied summary judgment on the excessive force claims. Thus, permitting withdrawal of the admission will promote consideration of the merits of this claim. The plaintiff has not opposed the motion to withdraw admission. Even with the admission, there is conflicting evidence of record concerning whether defendant Chicano slammed the plaintiff's head into the shower wall. The court is not persuaded that permitting defendant Chicano to withdraw this admission will prejudice the plaintiff in maintaining this action on

the merits. Defendant Chicano's motion to withdraw his response to request for admission 9 is granted.

### B. Involuntary Psychiatric Medication

In his cross-motion for summary judgment, the plaintiff concedes that defendant Hair ordered the use of psychiatric medication in good faith and does not oppose entry of summary judgment in her favor. Accordingly, the defendants' motion for summary judgment is granted as to the claims against defendant Hair.

### C. Use of Excessive Force

The use of excessive force against an inmate may constitute cruel and unusual punishment in violation of the Eighth Amendment, even if the inmate does not suffer a serious injury. *Wilkins v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175, 1176 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The court's inquiry must focus not on whether the inmate sustained a certain level of injury, but "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1178 (internal quotation marks and citation omitted). Although the extent of the injury is not the focus of the inquiry, it can provide information regarding the amount of force used. Unless the use of force is "repugnant to the conscience of mankind," a *de minimis* use of force will not be cognizable under the Eighth Amendment. *Id.*

The plaintiff was a pretrial detainee at the time of the incidents. Although his claims arise under the Fourteenth Amendment instead of the Eighth Amendment, both claims are analyzed under the framework of *Hudson v. McMillian*. *See United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999).

The plaintiff must demonstrate two components of his claim, one objective, the other subjective. The objective component focuses on the harm done by the defendant in light of contemporary standards of decency. The subjective component involves the defendant's motive. The plaintiff must show that the defendant "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks and citations omitted). Whenever the defendants use force maliciously and sadistically, however, they always violate contemporary standards of decency regardless of the injury suffered. *See id.* at 269.

Factors relevant to whether the force used was necessary under the circumstances "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur" include the extent of the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

In addition, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). This deference applies both to actions taken in response to prison unrest or confrontations with inmates and to preventative measures taken to reduce such incidents. *See Whitley*, 475 U.S. at 322.

The defendants assume, for purposes of deciding the motion for summary judgment only, that the facts alleged in the complaint are true and argue that the plaintiff cannot, as a matter of law, demonstrate use of excessive force. *See* Defs.' Mem., Doc. #20-1, at 1 n.1 (accepting the plaintiff's version of events as true for purposes of the motion for summary judgment). In support of their position, the defendants refer the Court to several cases rejecting excessive force claims. In none of the cited cases, however, was the prisoner subdued and compliant at the time force was used.

In *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998), the court rejected an excessive force claim where a police officer struck a woman with a nightstick when she tried to separate her boyfriend and the police officer. Unlike the plaintiff, the woman was struggling with the police officer at the time the force was used.

In *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997), a prisoner claimed that a correctional officer slapped him twice. Just prior to the slaps, the prisoner was interfering with and harassing a correctional officer and screaming as loud

as he could. The court held that under these circumstances, including a question of the prisoner's sobriety and the prisoner's concession that he suffered no physical injury from the two slaps, this was a *de minimis* use of force and dismissed the claim. The force was used to subdue the inmate, not after he had been subdued.

In *Dawes v. Coughlin*, 964 F. Supp. 652, 657 (N.D.N.Y. 1997), the prisoner spat at a correctional officer, attempted to kick a correctional officer and violently refused to comply with an order to proceed to restrictive housing. Correctional staff took the prisoner to ground face first and held him until he was calm. Although the prisoner alleged that correctional staff repeatedly kicked and punched him, neither the witnesses to the incident nor the nurse who examined the prisoner after the incident substantiated the alleged use of force. Absent any evidence, the court dismissed the excessive force claim. Here, however, the defendants assume the facts alleged by the plaintiff are true.

In *Pete v. DeGray*, No. 3:00cv2384(AWT), 2004 WL 547198, at *5 (D. Conn. Mar. 12, 2004), the prisoner conceded that his cellmate had covered the cell window with a towel. Neither person removed the towel in response to direct orders. As a result, a chemical agent was sprayed into the cell. The court concluded that the force was not excessive and was appropriate to restore order.

Finally, in *Geyer v. Choinski*, No. 3:05-cv-695(JCH), 2006 WL 3500886, at *4 (D. Conn. Dec. 1, 2006), the prisoner held open the food trap in his cell door even after a chemical agent was used. When correctional staff forced the trap shut, a portion of the prisoner's pinky finger was severed. The court concluded that the

11

defendants had attempted to mitigate the amount of force used and did not act with sufficiently culpable states of mind. Once again, the force was used to control the situation, not after the prisoner had been subdued.

Here, although the plaintiff was out of control while in his cell, he had stopped the objectionable behavior and submitted to being handcuffed. There was no suggestion that the plaintiff continued to misbehave when his cell door was opened. Rather, the defendants accept the plaintiff's allegation that he was subdued and complying with orders. Although the more egregious actions were taken by defendant Chicano, all three correctional officers were involved in bringing the plaintiff to the ground and defendant McDaniel was present and appeared to approve all of the actions.

The court cannot conclude, as a matter of law, that slamming the plaintiff to the ground face first, punching him in the head, bending his fingers and slamming his head against the wall while the plaintiff was handcuffed and compliant with orders were actions taken in good faith. The defendants' motion for summary judgment is denied as to the claim for use of excessive force. Because there is a genuine issue of material fact regarding the use of force, the plaintiff's cross- motion for summary judgment and supplemental cross-motion for summary judgment also are denied.

D. <u>Qualified Immunity</u>

Finally, the defendants argue that they are protected by qualified immunity. The doctrine of qualified immunity protects government officials from liability for

damages caused by the performance of discretionary official functions if their conduct does not violate the plaintiff's clearly established right of which a reasonable person would have been aware. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the court considers two questions: first, whether, construing the facts in favor of the non-moving party, there is a violation of a constitutionally protected right; and second, whether, considering the facts of the case before it, that right was clearly established at the time of the incident. Qualified immunity is warranted unless the state official's conduct violated the plaintiff's clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 813, 815-16 (2009) (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order).

To evaluate whether a right is clearly established, the court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). The analysis focuses on cases from the Supreme Court and Second Circuit. *See Williams v. Greifinger*, 97 F.3d 699, 706 (2d Cir. 1996).

An inmate's right to be free from the use of excessive force was "clearly established" at the time of the alleged incident. *See, e.g., Hudson*, 503 U.S. at 9-10. The duty to protect inmates from harm also was clearly established. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). For purposes of deciding their motion for summary judgment, the defendants have accepted the plaintiff's

allegations as true. The plaintiff alleges that he was subdued and complaint and that there was no need to use force. Gratuitous use of force is a clear constitutional violation. *See Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010) (gratuitous use of force is unreasonable and excessive) (citing *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999). Thus, the defendants' motion for summary judgment is denied on this ground.

## IV. Conclusion

Defendant Chicano's Motion to Withdraw His Admission to Plaintiff's Request for Admission Number 9 [Doc. #23] is GRANTED. The Defendants' Motion for Summary Judgment [Doc. #20] is GRANTED as to the claims against defendant Hair and DENIED in all other respects. The Clerk is directed to terminate Catherine Hair as a defendant in this case.

The plaintiff's Cross-motion for Summary Judgment [Doc. #22] and Supplemental Cross-motion For Summary Judgment [Doc. #25] are DENIED. The case will proceed to trial on the claims for use of excessive force against defendants McDaniel, Chicano, Zentek and Ile.

                      IT IS SO ORDERED.

                      _____/s/_____

                      Vanessa L. Bryant
                      United States District Judge

Dated at Hartford, Connecticut this 20th day of June 2011.